## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**AMANDA MILLSAP**                                                    **PLAINTIFF**

**VS.**                          **No. 3:19-cv-00338 PSH**

**ANDREW SAUL,  Commissioner,**
    **Social Security Administration**                          **DEFENDANT**

## ORDER

Plaintiff Amanda Kay Millsap ("Millsap"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Saul") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination was not supported by substantial evidence.  The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on April 4, 2019.  (Tr. 34-60).  The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Saul's decision.  42 U.S.C. § 405(g).  The relevant period under consideration is from August 22, 2017, the date of alleged onset, through May 17,

1

2019, when the ALJ ruled against Millsap.

*The Administrative Hearing:*

At the April 4, 2019 hearing, Millsap was 43 years old, 5' 5 ½" tall, weighed 185 pounds, and reported she earned a GED and completed two semesters of college work.  Millsap lived with her boyfriend and her four-year old grandson.

At the time of the hearing, Millsap was working part-time (three days a week, at least five hours a day) as a human resources assistant at the Piggott Community Hospital.  Millsap testified that her boss allows great flexibility on when she worked (she "lets me work as I can"), allows her to take breaks as needed, and provides a work area isolated from others to protect her weakened immune system.  (Tr. 49). Millsap stated she was employed full time at the hospital for five years (2012-2017) as a housekeeping supervisor.  Other previous employment included assistant lab manager at an optical shop and kitchen worker at Kum & Go.

Millsap identified several impairments hindering her from full time work.  She described blisters from psoriasis, including blisters in her ears and on her feet and hands.  According to Millsap, she suffers from occasional hearing loss tied to the blisters, and from a great deal of foot pain.  She indicated she "could walk but it hurts really bad" when the blisters are present.  (Tr. 45).  Millsap stated the blisters on her hands and feet, coupled with back pain, caused her to be totally off work from June

2017 to May 2018.  She received short-term disability during this period.  Millsap noted improvement in the blisters but said the "main issue at this point" is a weakening of her bones due to the blisters. (Tr. 46).  Millsap described that treatment for the blisters now includes a monthly shot which helps, but also produces chronic fatigue and bruising.  She also stated her feet hurt even when blisters are not present.  Other impairments noted by Millsap were a vitamin D and B12 deficiency, back pain which interfered with her sleep, post traumatic stress disorder ("PTSD"), and anxiety.  Millsap stated she was not seeing a mental health professional at the time of the hearing, and she identified Lorazepam, an anti-anxiety medication, and Cosentyx, for psoriasis, as current medications.

Millsap described daily activities and abilities at the hearing.  She has a license and drives, cooks, cleans, vacuums, and does laundry and dishes.  Her boyfriend assists in chores and bathes and dresses the four-year old grandson.  She has good and bad days and "can't sit for long periods of time."  (Tr. 51).  She estimated she could stand and walk for fifteen minutes, and could sit for thirty minutes before needing a break.  (Tr. 39-56).

Myrtle Johnson ("Johnson"), a vocational expert, testified.  Johnson testified that Millsap could not perform any of her past relevant work.  The ALJ asked Johnson to assume a worker of Millsap's age, education, and experience, who could perform

sedentary work with the following limitations: occasionally climb stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders; frequently but not constantly handle and finger bilaterally; must avoid hazards including unprotected heights and dangerous mechanical parts; and must avoid concentrated exposure to pulmonary irritants and extreme heat and cold. Johnson testified such a worker could perform the jobs of addressing clerk and callout clerk. Johnson opined, however, that no jobs would be available if the hypothetical worker would miss work or be late for work more than twice a month and would require frequent unscheduled breaks during the workday. (Tr. 56-59).

*ALJ's Decision:*

In her May 17, 2019, decision, the ALJ determined that Millsap had not engaged in substantial gainful activity since August 22, 2017, the alleged onset date, and acknowledged that Millsap had worked on a part-time basis. She found that osteoarthritis and dermatitis were Millsap's severe impairments. The ALJ noted Millsap's PTSD, finding it to be a non-severe mental impairment. The ALJ considered the "paragraph B" criteria regarding mental impairments, finding that Millsap had no more than mild limitations in any of the four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing

oneself.   The ALJ found Millsap did not meet any Listing, and she explicitly addressed Listings 1.02A, 1.02B, 1.04, and 8.05 (dealing with dermatitis), 12.04, 12.05, and 12.06. The ALJ determined Millsap had the RFC to perform sedentary work with restrictions which mirrored those contained in the hypothetical question posed to Johnson.   This RFC formulation was based, in part, upon the ALJ's determination that Millsap's subjective statements "were not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 16).   The ALJ focused heavily upon the objective medical evidence, specifically citing numerous MRIs and x-rays which reflected mild changes.   The ALJ also addressed the opinions of treating nurse Sara Hitt ("Hitt"), deeming them "somewhat persuasive."  (Tr. 17).   The ALJ did not, however, embrace Hitt's opinion that Millsap lacked the physical stamina to complete a normal workday or work week.   Instead, the ALJ found this portion of Hitt's opinions at odds with other medical evidence in the record.   The ALJ also found the opinions of the state agency physicians more persuasive on the issue of stamina. Relying upon Johnson's expert testimony, the ALJ determined that Millsap was capable of performing jobs in the national economy.   Therefore, the ALJ concluded Millsap was not disabled.  (Tr. 10-20).

*Medical Evidence During the Relevant Period:*

On August 23, 2017, Dr. Calin Savu ("Savu") performed a left cervical medial

branch block on Millsap to address cervical spine pain. (Tr. 353-354). Savu administered another "left confirmatory cervical medial branch block" on September 14, 2017. On both instances, Millsap tolerated the procedure well and was instructed to keep a pain score diary and report back to Savu. (Tr. 355-356).

On September 6, 2017, Millsap was seen by Dr. Lance Yeoman ("Yeoman"), a dermatologist, for followup for subcorneal pustular dermatosis[1] diagnosed in June. Yeoman prescribed Bactrim for blisters on Millsap's hands and feet. Millsap subsequently reported the Bactrim made her shaky and new blisters appeared, and Yeoman, noting that her culture had shown no growth, discontinued the Bactrim. (Tr. 586-591).

Millsap complained of hypertension, blisters on her hands and feet, lightheadedness, weakness, and insomnia when she was seen by nurse practitioner Hitt on September 19, 2017. Hitt diagnosed her with alopecia – rule out, fibromyalgia, muscle pain, frequent headaches, hypertension, arthritis, bilateral low back pain without sciatica, ankylosing spondylitis, muscle spasm, menopausal symptoms, primary insomnia, constipation, psoriasis, flank pain, and blister of left and right foot. Hitt prescribed Belsomra for insomnia, provided a sample of Edarbi for hypertension,

---

[1]

Subcorneal pustular dermatosis is a rare skin disease in which pus-filled pimples or blisters form under the top layer of the skin. HTTPS://rarediseases.info.nih.gov.

prescribed Voltaren for topical skin use, and prescribed a monthly B-12 injection. (Tr. 421-424).

Yeoman saw Millsap in late September 2017 for followup. Millsap reported her overall assessment as mild to moderate, and rated her pain as 6 on a 1-10 scale. Yeoman diagnosed subcorneal pustular dermatosis and alopecia, and started Millsap on doxycycline, and directed her to continue triamcinolone cream. (Tr. 594-595).

Dr. Jennifer Moore ("Moore") saw Millsap in early October 2017 for a rash and joint pain. Millsap reported disappointment with a dermatologist in St. Louis that she saw on referral from Yeoman. Millsap also stated she had stopped the doxycycline because it make her nauseous and she did not want to start Cosentyx until the nausea resolved. Moore assessed her with skin rash and ankylosing spondylitis. (Tr. 469-476).

Millsap saw Yeoman again on October 18, 2017. The record noted that Millsap was scheduled to be seen at the Mayo Clinic on November 1. Millsap rated her overall problems as mild to moderate. Yeoman diagnosed subcorneal pustular dermatosis and alopecia, continued treatment with topical cream and Otezla, and discontinued doxycycline. (Tr. 601-602).

Mayo Clinic physician's assistant William Aleman ("Aleman") saw Millsap on November 1, 2017 for a multi-system evaluation. Millsap's chief complaints were

fatigue, chronic pain, blisters of the hands, and earlier diagnosis of ankylosing spondylitis. There were several purposes of the visit, including to evaluate her for autoimmune disease, evaluate her for severe blisters on hands and feet, and to rule out other connective tissue diseases. Diagnoses included: outside diagnosis of ankylosing spondylitis, palmer and plantar rash, outside diagnosis of Sneddon-Wilkinson dermatosis, alopecia, hypertension on treatment, hyperlipidemia history, obesity, chronic constipation, probable pelvic floor dysfunction, anxiety/depression, chronic fatigue, chronic pain syndrome, and fibromyalgia, with multiple tender points. (Tr. 545-550). She was referred to several specialists for evaluation, including rheumatology, dermatology, gastroenterology, and psychiatry.

The next day Millsap was seen by Dr. Lynne Peterson ("Peterson"), a rheumatologist at the Mayo Clinic. Peterson's diagnoses included a history of ankylosing spondylitis, positive HLA-B27, chronic cervical and lumbar spine pain, hand paresthesia, blistering skin disease of palms and soles, myofascial pain syndrome, osteopenia, and alopecia areata. (Tr. 552-555).

Four days later, Millsap was examined by Dr. Ulas Camsari ("Camsari"), a psychiatrist at the Mayo Clinic. Camsari found Millsap presented with "some signs and symptoms of mild depressive disorder associated with anxious features in the setting of early life sexual abuse and recently worsening psychosocial stressors." (Tr.

8

558).   Camsari recommended adding Duloxetine, switching Lorazepam to Clonazepam, adding psychotherapy, and discussing the potential need for regular visits with a psychiatrist if needed.  He diagnosed Millsap with chronic PTSD, unspecified depressive disorder, fibromyalgia, ankylosing spondylitis, and chronic cervical and lumbar spine pain.  (Tr. 556-558).

Millsap was also seen on November 6, 2017, by Mayo Clinic dermatologist Dr. Brian King ("King").  He diagnosed her with pustular psoriasis of the hands and feet, and query acrodermatitis continua of Hallopeau.[2]  (Tr. 559-560).

Millsap was seen again by Peterson, the dermatologist, on November 7, 2017. Peterson found the lab results to be stable, and the plan was to increase Otezla.  If this increase did not control her symptoms, the next move was to add methotrexate, and another option would be to consider Cosentyx, which was approved for both psoriasis and ankylosing spondylitis.  Diagnoses were ankylosing spondylitis, pustular psoriasis of palms and soles, osteopenia, cervical and lumber spondylitis, and depression.  (Tr. 564).

Millsap was seen by Yeoman on November 22, December 20, 2017, and January 24, 2018.  At the November visit Yeoman prescribed methotrexate.  In

---

[2] Acrodermatitis continiua of Hallopeau is a rare, sterile pustular eruption of one of more digits, more frequently arising on a finger than a toe.  It is a localized form of pustular psoriasis.  HTTPS://ncbi.nlm.nih.gov.

December Millsap reported mild to moderate overall assessment, and no pain, and Yeoman described her as stable and directed her to continue treatment with methotrexate and folic acid.  In January 2018, Millsap rated her pain at 7 on a 1-10 scale, and described her overall assessment as mild to moderate.  Yeoman's plan again was to continue treatment with methotrexate and folic acid.  (Tr. 626-643).  This treatment was continued when Millsap saw Yeoman in February and April, 2018.  (Tr. 647, 708-709).

In February 2018, Millsap returned to nurse practitioner Hitt for check up and refills, back and foot pain, and dry skin on her feet.  Hitt renewed cyanocobalamin and Ativan and suggested Cetophil and soaking in warm water to relieve foot dryness. (Tr. 748-751).

In June 2018, Yeoman recorded Millsap was improved.  The plan was to continue methotrexate.  (Tr. 706).

On July 11, 2018, Millsap was seen at Yeoman's office by Dr. Brandice Rogers ("Rogers") for biologic therapy.  Noting that Millsap had clinical symptoms of joint involvement and had been unresponsive to topical treatment, Rogers injected Millsap with Cosentyx.  A week later Millsap was again injected with Cosentyx, as her moderate psoriasis was unchanged.  (Tr. 694-699).

On July 25, 2018, Millsap complained of extreme fatigue, painful feet, and

headaches at an appointment with Hitt.  Millsap's medication (Ativan, Edarbi, Tylenol with codeine, and Soma) were refilled.  (Tr. 744-747).

At an August 15, 2018 visit, Yeoman described the psoriasis as better and noted the labs were within normal limits.  Millsap was self-injecting Cosentyx at home.  (Tr. 690-691).  On that same date, Millsap also saw Hitt for check up and lab work.  (Tr. 741-743).   In mid-October 2018, Millsap returned to Hitt complaining of an occasional lump in her throat and heart palpitations.  (Tr. 738-740).

Millsap presented to the emergency room on October 10, 2018, for a sore throat, muffled voice, difficulty swallowing, muscle aches, and joint pain.  She was diagnosed with pharyngitis and treated with penicillin and Advil.  (Tr. 756-757).

Hitt treated Millsap on January 28, 2019, for foot pain, bilateral hand pain, and toenails that were thick and growing horizontally.  Hitt renewed Millsap's Ativan, Soma, Tylenol with codeine, and Edarbi.  (Tr. 732-735).

On the next day, Hitt completed a Medical Source Statement–Mental and a Medical Source Statement–Physical.  Hitt found no mental limitations except for mild limitation in her ability to travel in unfamiliar places or use public transportation.  Hitt found the following physical limitations: occasionally lift and carry ten pounds; frequently lift and carry less than ten pounds; stand and/or walk, and sit, for about two hours; occasionally reach and handle; frequently balance; occasionally climb, stoop,

kneel, crouch, or bend; would not need frequent, unscheduled bathroom breaks, frequent rest periods, or longer than normal breaks; would need to shift at will between sitting and standing/walking; would not have the physical stamina to complete a normal workday and workweek and maintain an ordinary work routine; not capable of maintaining a full-time work schedule; medications would not cause a decreased ability to concentrate and persist in a job setting; must avoid concentrated exposure to extreme heat, solvents/cleaners, soldering fluxes, and chemicals; and must avoid moderate exposure to extreme cold and fumes, odors, dust, and gas. Hitt estimated Millsap would miss a day of work every other month due to her impairments. The form completed by Hitt asked her to list the objective medical findings which supported the physical limitations. Hitt listed "stiff joints, generalized arthritic pain." (Tr. 729-730).

*Analysis of Millsap's claims of error by the ALJ:*

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Current regulations direct the ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those

from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920a (2017).[3] These regulations instruct the ALJ to consider the consistency of all of the medical treatment records and opinions. "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (2017).

Millsap claims that the ALJ did not give adequate credence to Hitt's opinion. The question for the Court is whether the ALJ placed "permissible weight" on her opinion. *Lawrence v. Saul*, ___ F.3d ___, 2020 WL 4375088 (8th Cir.) (July 31, 2020). The ALJ credited many of Hitt's limitations, including the limitation to sedentary work. The ALJ declined to adopt Hitt's opinion regarding Millsap's stamina and ability to complete a normal workday or work week. Substantial evidence supports the ALJ's treatment of Hitt's opinion. First, the ALJ correctly found Hitt's opinion at odds with other medical evidence in the record. The ALJ cited

---

[3]

The current regulations contrast with prior law which provided that the opinion of a treating physician merited deference and "is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).

medical evidence, "including normal gait, full strength, normal sensation, normal range of motion, and negative Romberg tests." (Tr. 17). Additionally, the ALJ did not solely rely on the opinions of the state agency examiners rather than Hitt, as Millsap contends. Instead, the ALJ cited to Savu's findings of mild distress, normal range of motion cervical and thoracic spine; Moore's finding of joint stiffness but no redness, swelling, deformity, and no decreased joint range of motion; Aleman's finding of a negative Romberg test; Peterson's finding of no neck or back pain; Yeoman's finding of appropriate gait and grossly intact proximal and distal strength in the upper and lower extremities; and Glenn's findings, which included his notations that Millsap's psoriasis was much improved, and she had normal range musculoskeletally with no edema. (Tr. 350, 469, 548, 553, 618, 753, 756). The ALJ's analysis of Hitt's opinion was not erroneous, in light of the numerous objective medical findings which were at odds with Hitt's conclusions regarding Millsap's stamina.

Other reasons support the ALJ's treatment of Hitt's opinion. Hitt listed "stiff joints, generalized arthritic pain" as the objective medical bases supporting her opinion. It is open to debate on whether stiff joints and generalized arthritic pain are an objective, rather than subjective, medical basis for reaching a conclusion. Clearly, imaging results or laboratory findings would constitute an objective medical basis for

an opinion, and the absence of such a foundation diminishes the import of the opinion. Also, when a treating source provides a checklist form, as Hitt did, the opinion's value is lessened because it consists of conclusions rather than findings tied to clinical or diagnostic data. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Finally, Hitt's own treatment notes did not mention the limitations contained in her medical source statement. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (limitations in physician's medical source statement unmentioned in records of treatment).

In summary, substantial evidence supports the ALJ's consideration of Hitt's opinion.[4]

Millsap also contends error in the RFC determination due to the ALJ's failure to properly consider her ankylosing spondylitis.[5] Although Millsap was diagnosed by Hitt and Moore with this disease, and the doctors at the Mayo Clinic noted the diagnosis, the mere diagnosis does not equate with functional restrictions. The ALJ,

---

[4]

Whether using the current or former regulations, the Court concludes substantial evidence supports the ALJ's discussion and ruling regarding Hitt's opinions.

[5]

Ankylosing spondylitis, according to the Mayo Clinic, is "an inflammatory disease that, over time, can cause some of the small bones in your spine (vertebrae) to fuse. This fusing makes the spine less flexible and can result in a hunched-forward posture. If ribs are affected, it can be difficult to breathe deeply." www.mayoclinic.org/diseases-condictions/ankylosing-spondylitis/symptoms-causes/syc-20354808.

at Step 2, found severe impairments of osteoarthritis and dermatitis.  There was no error in omitting ankylosing spondylitis from this list, as Millsap points to no clinical findings that this disease resulted in functional restrictions.  While Millsap urges that this diagnosis is consistent with her testimony of difficulty sitting for long periods, subjective statements, even coupled with a diagnosis, falls short of demonstrating disability.

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C.A. § 423.  There is no merit to Millsap's claim of RFC error based on the ALJ's consideration of the ankylosing spondylitis diagnosis.

Millsap's final argument is that the ALJ erred in finding she could frequently handle and finger, citing medical records confirming blister outbreaks, as well as her own testimony and her subjective statements to Peterson and Hitt, to support this argument.  The Court acknowledges a history of blistering on her hands and feet

which resulted in her being off work from June 2017 through May 2018.  Millsap testified, however, to improvement with these episodes, stating that her main issue at the time of the hearing was weakening of her bones, along with blisters on the back of her ankles and under her toenails.  The improvement permitted her part-time return to the work setting, performing a job for at least five hours a day three days a week.  This part time job was described by Millsap as secretarial work.   The medical evidence also supports that Millsap's psoriasis improved as her medications were altered after her visit to the Mayo Clinic. The ALJ determined that Millsap's dermatitis was a severe but not disabling impairment.  Substantial evidence supports the ALJ's treatment of this impairment, given the RFC limitations and her consideration of the objective medical evidence and weighing of Millsap's testimony and the Hitt's opinions.

In summary, substantial evidence supports the determinations reached by the ALJ.  The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion.  The test is whether substantial evidence supports the ALJ's decision.  *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is amply satisfied in this case.

    IT IS THEREFORE ORDERED that the final decision of Saul is affirmed and

Millsap's complaint is dismissed with prejudice.

IT IS SO ORDERED this 16th day of October, 2020.

_____
UNITED STATES MAGISTRATE JUDGE